Syllabus.

# Richmond.

## Title Guarantee Trust and Savings Bank v. Clifton Forge National Bank, et als.

### November 17, 1927.

1. Mortgages and Deeds of Trust—*Deed of Trust to Save Beneficiary Harmless—Right of Beneficiary to Release Security.*—It is true as a general proposition in Virginia that one who is secured by a trust deed executed for the purpose only of saving her harmless may release that security at pleasure, since the contract is for her benefit and not for the benefit of the creditor who is in no wise a party to it, but, like all other rules, intervening equities may obtain and prevent its application.

2. Mortgages and Deeds of Trust—*Priorities as between Deeds of Trust—Beneficiary in Second Deed of Trust Obtaining Valuable Concession from Beneficiary in First Deed—Estoppel—Case at Bar.*—In the instant case complainant was the holder of a note secured by a deed of trust executed by a husband and wife. Defendant was the holder of prior notes executed by the husband and endorsed by the wife; and on the same day the husband executed a deed of trust conveying the property in litigation to save harmless his wife by reason of her endorsements of these notes. Before making its loan complainant had stated that it would not make the loan unless defendant would agree not to foreclose under the deed of trust to save the wife harmless within the period of the next ensuing year. To this defendant agreed. The debtor failed to pay complainant's note at maturity and complainant advertised and sold the property. In the notice of sale it was stated that the property was sold subject to defendant's deed of trust. Complainant's position was that the former trust deed was for the wife's benefit and she had a right to release it at pleasure and did release it by joining in the deed with covenants of general warranty which secured the debt of complainant.

    *Held:* That complainant, after lulling defendant into security by his conduct, could not be permitted to change front to the injury of defendant.

3. Estoppel—*Election—Inconsistent Positions.*—A party cannot, either in the course of litigation or in dealings *in pais,* occupy inconsistent positions. Upon that rule election is founded; a man shall not be

allowed, in the language of the Scotch law, "to approbate and reprobate." And where a man has an election between several inconsistent courses of action, he will be confined to that course which he first adopts; the election, if made with knowledge of the facts, is itself binding; it cannot be withdrawn without due consent; it cannot be withdrawn though it has not been acted upon by another by any change of position.

Appeal from a decree of the Circuit Court of Augusta county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Abram P. Staples* and *Horace M. Fox*, for the appellant.

*F. W. King* and *J. M. Perry*, for the appellees.

Chichester, J., delivered the opinion of the court.

This is a suit instituted, in the Circuit Court of Augusta county, by Title Guarantee Trust and Savings Bank, against the Clifton Forge National Bank and others, the object of which was to restrain and enjoin Herbert J. Taylor, trustee in a certain deed of trust from C. F. Sentz and Hattie P. Sentz, his wife, from making sale of the property thereby conveyed, and to have the deed of trust marked satisfied.

The learned judge of the trial court denied the prayer of the bill and this appeal was allowed to the final decree thus disposing of the cause.

In a written opinion, made a part of the record, the trial judge fairly states the facts and correctly, we think, disposes of the controversy. That opinion is as follows:

"On the 30th of December, 1921, C. F. Sentz executed four certain notes in amount $3,000.00, $2,500.00, $800.00, and $700.00. All of them payable on March 29, 1922, to the order of Hattie P. Sentz, his wife, at the Clifton Forge National Bank, of Clifton Forge, Virginia. These notes were endorsed by Mrs. Sentz and promptly discounted by the bank. On the same day—on December 30, 1921—Sentz executed a trust deed to Herbert J. Taylor, trustee, in which his wife joined, conveying the real estate in litigation here to this trustee in trust to secure and save harmless his wife by reason of these endorsements. These notes, due as we have seen ninety days from date, were renewed from time to time and are still held by the defendant bank.

"In 1923, Sentz conceived the idea of securing an additional loan on this land. The facts relative thereto as set out in an agreed 'statement of facts' are as follows:

" 'On or about the 8th day of August, 1923, C. F. Sentz communicated with the said Clifton Forge National Bank stating that the said C. F. Sentz was applying to complainant for a loan to be secured by a deed of trust on the property involved in this suit and had stated that the Clifton Forge National Bank was the holder of said notes aggregating $7,000.00, and that in order to secure said loan it would be necessary for the said Clifton Forge Bank to assure complainant (Title Guarantee Trust and Savings Bank) that it would not foreclose under its said deed of trust within the period of the next ensuing year, stating that that was the time for which it contemplated making the loan to Mr. Sentz. That the Clifton Forge National Bank, by its President, J. H. Drewry, on August 9, 1923, by letter advised the complainant that it held the notes referred to in said trust deed of December 30, 1921, and that

the amount of said notes was $7,000.00, and that it did not expect to call the loan within twelve months from that time.

" 'That all of this information was given by the said C. F. Sentz and by the said Clifton Forge National Bank to the complainant before the complainant made the loan for $10,000.00 and accepted the security therefor which is set out in the bill in this cause.

" 'That after receipt of said letter from said Clifton Forge Bank said complainant loaned to said C. F. Sentz the sum of $10,000.00, evidence'd by the note of C. F. Sentz and endorsed by Hattie P. Sentz, and secured by the deed of trust as related in complainant's bill.'

"This $10,000.00 loan was secured by a trust deed to Martin and Staples, trustees, on the same real estate already conveyed to Taylor, trustee. The note evidencing the debt was due at eight months and the parties of the first part (Mr. and Mrs. Sentz) in this deed 'covenant and agree to pay the debt hereby secured promptly at maturity.' The debt was not paid promptly at maturity, the property was advertised for sale and was sold on the 25th day of April, 1925.

"Notice of the sale by Staples, trustee, contains the following statement: 'This sale is made subject to two certain other deeds of trust, the first securing a debt of $4,120.00, with interest from November 1, 1924, and the second deed of trust securing $7,000.00.' At it the president of the defendant bank was present, but since the property was sold, subject to his bank's debt, he took no steps to protest its interest.

"It there sold for $1,100.00 and for the complainant had been appraised at $51,076.00. On it there was a prior uncontested lien of $4,000.00, so that property

appraised at over $51,000.00, if plaintiff's claim is to be maintained, was bought in by it for $5,100.00.

"In short form, plaintiff's position is that the trust deed to Taylor, trustee, was for Mrs. Sentz's benefit and for her benefit only; that she had the right to release it at pleasure and did release it by joining in the deed with convenants of general warranty which secured the $10,000.00 debt and by promising to pay the same.

[1] "It is true as a general proposition in Virginia that one who is secured by a trust deed executed for the purpose only of saving her harmless may release that security at pleasure, since the contract is for her benefit and not for the benefit of the creditor who is in no wise a party to it, but, like all other rules, intervening equities may obtain and prevent its application.

[2] "If it be conceded that the deed to Staples, trustee, did something more than subordinate her contingent right of dower in the equity of redemption to the debt secured and was adequate to pass every interest of every kind whatsoever that she may have had therein, we would still be confronted by the following facts:

"When the Roanoke company was considering the advisability of making a loan at all, the debt of the Clifton Forge Bank was brought to its attention. The original notes held by that bank were long since due and had been renewed from time to time. The appraisement which had been made at the instance of the plaintiff seemed to indicate that the loan was a good one, but for the purpose of avoiding complications it took the matter up with the Clifton Forge Bank and said in substance that it would not make the loan at all unless the Clifton Forge Bank agreed not to enforce its rights for one year. This the Clifton Forge Bank

agreed to do and thus waived a valuable present right.

"If the second trust deed had not been executed, it is clear that the bank might at any time after ninety days from December 30, 1921, have instituted proceedings to substitute itself to such rights as Mrs. Sentz took under the deed to Taylor, trustee. This appears to be conceded by plaintiff's counsel in his brief wherein it is said: 'And since the endorser cannot enforce the indemnifying security until he sustains loss, or at the earliest, until the principal, debtor is in default and the creditor calls on the endorser, there can be no right of subrogation until that time, and, until that time, the creditor has no right or interest in the security whatsoever.'

"This right defendant waived at plaintiff's instance and when it was done it must of necessity have been understood that plaintiff was taking a subordinate lien, otherwise there would have been no occasion to treat with the defendant at all or to have obtained from it any concession or any waiver of any right. In such circumstances to have secured from the defendant time to put through a transaction different from what was understood and which cut under and made worthless its security savors of fraud. That such must have been the understanding when this agreement was made is shown by the fact that as late as the date of the actual sale the $7,000.00 deed of trust was recognized as a prior lien. Moreover, at the sale the distinct announcement heretofore quoted was made. Of course, the defendant did not feel called upon to take any steps there to protect itself. It may be that such an effort would have been futile, but defendant had the right to try and it is no answer now to say that if it will pay the plaintiff's debt it may have the property.

This announcement and the plaintiff's shifting attitude also savors of fraud, not that any actual fraud was intended, but the result would be the same if the end sought was attained. If the $7,000.00 lien at the date of this sale was superior to that of the plaintiff, and the notice of sale itself makes that plain, it still is. In all human probability the plaintiff relied upon the appraisement and deemed its debt as a junior lien amply secured. It did not wake up to its peril until the property was actually put up at auction.

"The prayer of the bill must be denied. The defendant may take steps as it seems necessary to enforce the lien reserved in the deed to Taylor, trustee. Mr. and Mrs. Sentz are both insolvent and it has no other hope for recovery."

Although this opinion was written before the very able brief of counsel for appellant was prepared, and before the able oral presentation of the case before this court, there seems little to add by way of answer to those arguments. We recognize the principles enunciated in the cases quoted from and cited, as applied to the facts of those cases, but to permit their application in the instant case would amount to sanction of a legal fraud. This is the ground upon which the trial court rested its decision. That this conclusion is correct is clearly shown by the inevitable answer to two questions pertinent to the conduct of appellant.

Suppose at the time the appellant asked assurance of the Clifton Forge Bank that it would not foreclose under its deed of trust for a year, the former bank had said "we do not recognize now that you have any rights, under that deed of trust, and our ultimate object is to assert our lien as prior to your rights."

Is there any doubt but that the Clifton Forge Bank would have, at once, perfected its right as it could

admittedly have done at any time prior to the sale, and become subrogated to the rights of Mrs. Sentz and holder of a lien prior to that of appellant? To ask this question is to answer it.

But the attitude of the appellant was exactly the opposite. It recognized by its conduct and its communications, the rights of the Clifton Forge Bank, and lulled it into a sense of security not only at that time but throughout the entire period when it could have protected itself.

Again, at the time the trustee, Staples, advertised the property under the appellant's deed of trust, if the advertisement had contained this language, "the sale is made under a first lien deed of trust," instead of this, "this sale is made *subject* (italics supplied) to two other certain deeds of trust," which it did contain, is there any doubt but that the Clifton Forge Bank would then and there have immediately perfected its right and become in fact the prior lienor? After twice lulling the Clifton Forge Bank into security by conduct of this sort, the appellant cannot now be permitted to change front to the injury of appellee. It may have been perfectly innocent of bad intentions, in all its dealings with the Clifton Forge Bank, but it secured concessions from that bank which it could not have secured if it had assumed a different attitude throughout the transaction, and which would have caused the Clifton Forge Bank to properly protect itself.

The principle enunciated in *Arwood* v. *Hill's Adm'r*, 135 Va. 236 at 243, 117 S. E. 603, 606, is applicable here: "Besides, it appears from the evidence that Kolar has elected to waive his claim against the Hill estate for *his* services and refused to join Arwood in a suit to collect any compensation from the administrator.

[3] "A party cannot, either in the course of litigation or in dealings *in pais*, occupy inconsistent positions. Upon that rule election is founded; a man shall not be allowed, in the language of the Scotch law, 'to approbate and reprobate.' And where a man has an election between several inconsistent courses of action, he will be confined to that course which he first adopts; the election, if made with knowledge of the facts, is itself binding, it cannot be withdrawn without due consent; it cannot be withdrawn though it has not been acted upon by another by any change of position. Bigelow on Estoppel, page 733.

"By such election and waiver in the instant case Kolar is estopped from seeking a recovery of any compensation for his services from Hill's estate."

See also *Robinson* v. *Shepherd,* 137 Va. 687, 696, 120 S. E. 265.

We are of opinion to affirm the decree of the circuit court.

*Affirmed.*