COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Beales and AtLee
Argued at Richmond, Virginia


JAMICA L. GILES

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0288-18-2                      JUDGE RANDOLPH A. BEALES
                                                    JANUARY 8, 2019

PRINCE GEORGE COUNTY PUBLIC SCHOOLS
  AND VML INSURANCE PROGRAMS


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Jamica L. Giles, *pro se*.

              Ralph L. Whitt, Jr. (Megan Kerwin Clark; Whitt & Del Bueno, PC,
              on brief), for appellees.


        Jamica L. Giles appeals the decision of the Virginia Workers' Compensation

Commission (the Commission) denying her additional benefits for injuries she contends she

suffered as a result of a workplace accident.  Giles contends that the Commission erred when it

concluded that her additional claims were barred by the provisions of the parties' compromise

settlement agreement.  Because we conclude that the parties' Commission-approved settlement

agreement plainly precludes an additional award, we affirm.

                                    I. BACKGROUND

        Between January and April 2017, Giles filed several claims for benefits for injuries to her

head, neck, back, face, eyes, jaw, ears, shoulders, right arm, and right elbow as well as for a

concussion, depression, anxiety, and Post-Traumatic Stress Syndrome, which she contends she

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

suffered as a result of a workplace accident on September 22, 2016. She sought medical benefits and periods of temporary total disability and temporary partial disability.

Before her claims were adjudicated, Giles, who was represented by an attorney, entered into a compromise settlement agreement with Prince George County Public Schools and VML Insurance Programs (collectively, the "County"). The settlement agreement awarded Giles $65,000 "plus all reasonable, necessary and authorized medical expenses . . . causally related to the injury by accident of September 22, 2016 . . . provided, however, that [the County] shall not be responsible for any examination or treatment to the right elbow, both shoulders (except right shoulder MRI) and ears." The agreement provided that the settlement was "a complete extinguishment and complete payment and discharge of any and all claims" arising from the September 22, 2016 accident. It also reflected the County's contention "that medical treatment related to the right elbow, both shoulders and the ears is not causally related to the accident." As documented by the compromise settlement, the County advanced $2,500 of the settlement money to Giles. The compromise settlement was approved by the Commission, and a "Settlement Order" was entered on May 11, 2017. Giles also signed a settlement affidavit which stated: "That I fully understand that this settlement forever closes my case, including any and all compensation or medical benefits except those specifically listed in the settlement."

On May 22, 2017, Giles filed a *pro se*[1] "Complaint" to the Commission in which she sought medical benefits for a right shoulder injury and vocational rehabilitation and training. The Commission interpreted this "Complaint" as a request for a review of the settlement order. Because of this interpretation, the Commission entered an order on June 13, 2017 vacating the settlement order, ordering claimant to return the settlement proceeds, and returning the matter to

---

[1] Giles's counsel moved to withdraw as counsel on May 31, 2017. An order from the Commission approving the withdrawal was entered on the same day.

the Claims Services Department for further consideration of Giles's claims. On June 20, 2017, however, Giles wrote to the Commission and stated that her complaint was not a request for a review of the settlement order. She explained that she wanted the settlement order to remain intact, and she wanted medical benefits for her right shoulder injury, vocational rehabilitation and training, and a $100,000 monetary award *in addition* to the benefits she received in the settlement agreement. Therefore, the Commission vacated its June 13, 2017 order and reinstated the May 11, 2017 settlement order. It also returned the matter to the hearing docket for a determination as to whether Giles was entitled to any additional benefits.

At a hearing before the deputy commissioner on Giles's additional claims, Giles testified that she had told her attorney that she did not want to sign a settlement agreement unless it covered her shoulder injury but that her attorney advised her that the County would not agree to include that additional claimed injury. Giles introduced screenshots of several text messages between herself and her attorney showing that she told her attorney that she wanted the County to pay for her shoulder. Giles testified that she did ultimately sign the settlement agreement, but stated that she did so "out of frustration."

Giles testified that she complained to her attorney about her shoulder again after she had signed the settlement agreement. She stated that her attorney informed her that she could still back out of the settlement, but she would have to return the $2,500 that the County had advanced to her under the agreement. Giles testified that, at that time, she had already spent some of the $2,500 and, therefore, could not return it to the County.

Seeking to understand her current position, the deputy commissioner asked Giles, "Do you want the terms of the settlement agreement based on which the settlement order was entered by the Commission, to remain intact?" Giles responded, "Yes. Yes ma'am." Giles reiterated during her testimony that she did not want the May 11, 2017 settlement order vacated.

Following the hearing, on August 10, 2017, the deputy commissioner denied Giles's claim for additional benefits, finding that it was barred by the terms of the approved settlement agreement. The deputy commissioner concluded that Giles understood the terms of the settlement agreement, and "while [Giles] may not have liked the terms of the compromise settlement, she ultimately decided to enter into that agreement." The deputy commissioner found that there was no evidence that the County "used unfair settlement practices in order to force [her] to settle in an attempt to avoid paying [her] for [her] compensable shoulder injury . . . ." The deputy commissioner also concluded that the Commission lacked jurisdiction to address Giles's claims regarding her attorney's alleged misconduct. Upon review of the deputy commissioner's decision, the Full Commission unanimously affirmed.

## II. ANALYSIS

"The Virginia Workers' Compensation Act encourages the voluntary settlement of claims arising from compensable injuries." Watts v. P & J Hauling, Inc., 41 Va. App. 278, 283-84 (2003). "Code § 65.2-701(A) provides that when a claimant and the employer have reached a settlement agreement and have filed a memorandum of the agreement with the commission for approval, such agreement shall be binding if approved." Damewood v. Lanford Bros. Co., 29 Va. App. 43, 47 (1999). See also Butler v. City of Virginia Beach, 22 Va. App. 601, 604 (1996) ("The commission's approval of a memorandum of agreement is binding, and 'an award of compensation entered upon such agreement is as enforceable as an award entered in a contested proceeding.'" (quoting Hartford Fire Ins. Co. v. Tucker, 3 Va. App. 116, 121 (1986))). "Absent clear and convincing evidence of fraud, misrepresentation, mutual mistake, or imposition the commission has no authority to vacate an award from which no party sought timely review." Id.

The clear and specific terms of the settlement order preclude Giles's request for additional benefits. The terms of the settlement documents expressly provide that Giles would

- 4 -

receive no benefits for her right shoulder. The record indicates that Giles understood the terms of the settlement agreement, as reflected in her testimony before the deputy commissioner and by her signature on an affidavit stating that she "fully underst[oo]d that [the] settlement forever close[d] [her] case, including any and all compensation or medical benefits except those specifically listed in the settlement." Furthermore, Giles had the opportunity to have the settlement order set aside (and, in fact, the settlement order was briefly vacated), but Giles wrote to the Commission specifically advising that she was "not seeking to have the settlement order reviewed or vacated," which resulted in the settlement order being reinstated. Although Giles may have been dissatisfied with the terms of the settlement, she is bound by her signature on the settlement documents and her repeated confirmations to the Commission that she wanted the agreement to remain intact. In short, there was an accord and satisfaction that binds her to the agreement that she made and signed.

In addition, the record is devoid of evidence of fraud, misrepresentation, mutual mistake, or imposition. Giles has not alleged any action by the County that would render one of these doctrines applicable. Furthermore, even assuming Giles's attorney's actions could provide a basis for the Commission to vacate the award (which, again, was apparently *not* Giles's desire), the text messages between Giles and her attorney show only that Giles's attorney informed her that she would have to return the $2,500 that was advanced as part of the settlement agreement if she wanted to back out of the settlement. Because the settlement agreement provides that the $2,500 was an advance on the settlement funds – not a voluntary payment under Code § 65.2-520, as Giles contends – it does not appear that this advice was erroneous. Because the record contains no evidence of fraud, misrepresentation, mutual mistake, imposition, or other legal basis that would require the award to be vacated, Giles is bound by the agreement she made and signed, as reflected in the settlement order.

## III. CONCLUSION

In short, Giles wants to keep the benefits she received under the settlement agreement without at the same time being bound by her release of the County, which is a key term of that settlement agreement.  However, Giles *is* bound by the terms of the settlement to which she agreed and is not entitled to additional benefits.  In very clear language, the settlement order released the County from any further liability to Giles and expressly provided that the County is not responsible for treatment for Giles's shoulder.  The record not only reflects that Giles understood the terms of the settlement but also shows her affirmative wish that the settlement order remain in place.  For all of these reasons, we affirm the decision of the Commission.

<u>Affirmed.</u>